## TOLMAN v. NEW MEXICO & DAKOTA MICA CO.

1. PRACTICE—BILL OF EXCEPTIONS—INSUFFICIENCY OF EVIDENCE.

    None of the evidence being in the abstract, this court will not search the transcript of the record to ascertain whether the trial court committed errors in its findings of fact, especially when the assignments of error are in the most general form; following French v. Lancaster, 2 Dak., 276, and St. Croix Lumber Co. v. Pennington, 2 Dak., 467.

2. SAME.

    In such case the court will only consider the question, whether the facts found by the trial court are sufficient to support the legal conclusions and judgment.

3. CORPORATION—CONTRACT FORBIDDEN BY LAW, INVALID.

    A corporation cannot lawfully contract to do that which the law of its creation expressly forbids, nor can it be compelled by law to perform such contract.

Filed February 16, 1885.

Appeal from the district court of Custer county.

*Bartlett Tripp* and *Frank J. Crawford*, for plaintiff and appellant.

The trial court found that "the seal of said corporation was not affixed thereto by its secretary nor by any person authorized so to do." This is equivalent to holding that the corporation could not be bound by a contract except under its corporate seal. This seems to be a misconception of the law as settled by many eminent authorities. The Bank of Columbia v. Patterson's Administrator, 7 Cranch, 306; Gray v. Portland, 3 Mass. 364; Worcester Turnpike Corp. v. Willard, 5 Mass. 80; Gilmore v. Pope, Id. 491; Andover T. Co. v. Gould, 6 Mass. 40; Mott v. Hicks, 1 Cow.

Again, in Bank of U. S. v. Dandridge, 12 Wheaton, 68, the learned Justice STORY says that "the rule" (that corporations aggregate could not contract except under the corporate seal) "has been broken in upon in a vast variety of cases in modern times, and cannot now, as a general proposition, be supported." In reference to the rule referree to by Judge STORY, as unsupported in modern times, Angel and Ames on Corporations, § 237, says: "In general; throughout the United States, it is entirely exploded."

To the same effect numerous decisions by the highest judicial authorities in the country can be cited. See Moss v. Averll, 10 N. Y. 457; National Bank v. Globe Works, 101 Mass. 57; Coppinger v. Armstrong, 8 Bradw. (Ill.), 210; Ward v. Johnson, 95 Ill. 238. See, also, Morawetz on Corp., § 176-7.

In Angel and Ames on Corporations, the learned authors say: "Though a contract made by the minority of a purchasing committee is not binding on a corporation, the ratification of their contract by the corporation may be inferred from the facts attending the transaction. And generally, if persons assuming to act as agents of a corporation, but without legal authority, make a contract, and the corporation receive the benefit of it, and use the property acquired under it, such acts will ratify the contract and render the corporation liable thereon." Epis. Char. Soc. v. Epis. Ch. in Needham, 1 Pick. 372; Bank of Columbia v. Patterson's Adm., 7 Cranch, *supra.*

The contract was executed partly in Illinois and partly in Dakota, and was valid in either place. Code 1877, p. 256. A corporation may purchase, hold and transfer shares of its own stock. Chicago, Pekin & Southwestern Railroad Co. v. Marseilles, 84 Ill. 149, the supreme court say:

"We entertain no doubt that a railroad company may, for legitimate purposes, purchase shares of its stock, which have been issued to individuals. Such is believed to have been the general custom of such bodies, nor have we known the power to have been questioned."

This is also sustained by decisions in other states. See Taylor v. Miami Export Co., 6 Ohio R. 83; City Bank v. Bruce, 17 N. Y. 507; Williams v. Savage Manufacturing Co., 3 Md. Ch. R. 452; The State v. Smith, 48 Vt. R. 266; *Ex parte* Holmes, 5 Cow. 426.

As to those 2,000 shares the transaction did not make La-Barre the owner thereof; it was simply a case of hypothecation; he had no right to be received to vote thereon as a stockholder; nor to receive dividends thereon. His rights in respect thereto were merely those of a pledgee, and those of the defendant company those of pledger. The law or vendor and purchaser

of shares of stock did not apply, and hence the prohibitions of the charter or statute, if affecting the rights of the parties to a contract of purchase of stock by the company, which we deny had no application to this transaction. Angel and Ames on Corp., § 132.

We affirm that the legality of the action of the corporation in making this contract cannot be drawn in question in this suit. It is established by current and ample authority that if a corporation can take title to land, or enter into contracts in reference to a given subject, for some purposes, whether the particular title was taken, or the particular contract was en-entered into for an unauthorized or prohibited purpose, cannot be tried collaterally. It is not material whether the objection comes from the corporation or the other contracting party. Hough v. Cook Co. Land Co., 73 Ill. 23; National Bank v. Matthews, 98 U. S. 628, and cases cited; Union Water Co. v. Murphey's Flat Fluming Co., 22 Cal. 621; Grant v. Henry Clay Coal Co., 80 Pa. St. 218; Leazure v. The M. Ins. Co., 10 Pitts, L. J., (N. S.,) 80.

In Hough v. Cook County Land Co., 73 Ill. 28, Mr. Justice SCHOLFIELD, speaking for the court, says: "But appellee being authorized to purchase and hold lands, and appellant having sufficient capacity to convey, the title was obviously vested in appellee by the delivery of the deed, and the question whether appellee has, by its purchase and use of lands, exceeded the powers conferred by its charter, is one between the state and appellee, with which appellant, as a grantor simply, has no concern. Banks v. Poniteaux, 3 Randolph, 141; Barron v. N. & C. T. Co., 9 Humphreys, 304; Chambers v. St. Louis, 29 Mo. 576; Attorney Gen. v. Tuder Ice Co., 104 Mass. 239; Whitman Mining Co. v. Boller, 3 Nevada, 391; Hayward v. Dandron, 41 Ind. 212; Angell & Ames on Corp., Secs. 152-3; Dillon on Mun. Corp., Sec. 444; Natoma W. & M. Co. v. Clark, 14 Cal. 544."

In National Bank v. Matthews, 98 U. S. 628, it is stated: "When a corporation is incompetent by its charter to take a title to real estate, a conveyance to it is not void, but only voidable, and the sovereign alone can object. It is valid until

assailed by a direct proceeding for that purpose.     Leazure v. Hillegas, 7 Serg. and R. (Pa.) 313; Goundie v. Northampton Water Co., 7 Pa. St. 233; Runyon v. Coster, 14 Pet. 122; The Bank v. Poitiaux, 3 Rand. (Va.) 136; McIndoe v. The City of St. Louis 10 Mo. 577.   See, also, Gold Mining Co. v. National Bank, 96 U. S. 640.   The authority first cited is elaborate and exhaustive upon the subject."

So Chancellor KENT says, in Silver Lake Bank v. North, 4 Johns. Ch. 370, in the instance of a Pennsylvania corporation: "Perhaps it would be sufficient for this case that the plaintiffs are a duly incorporate body, with authority to contract and take mortgages and judgments, and if they should pass the exact time of their power it would rather belong to the government of Pennsylvania to exact a forfeiture of their charter than for this court in this collateral way to decide a question of misuser by setting aside a just and *bona fide* contract."   See, also, Harris v. Runnells, 12 How. 79; Littlewort v. Davis *et al.*, 50 Miss. 403; The National Exchange Bank of Columbus v. Moore, 2 Bond, 170.

We submit that the judgment below ought to be reversed.

*Franklin W. Knight* and *Van Cise & Wilson,* for respondent.

The evidence could not be considered, even if made in proper manner a matter of record and duly certified here, because there was no motion for a new trial made in this action. This was just as essential in a trial to the court as to a jury,— then on appeal from the order denying a new trial, the evidence could be reviewed here.   Gagliardo v. Hoberlin, 18 Cal. 395; Allan v. Fennon, 27 Cal. 68 and 475; Yates v. Smith, 40 Cal. 669–70; Golden Terra Mining Co. v. Smith *et al.*, 2 Dak. 457–8.

What, then, is there before this court?   One question only: do the findings of the trial court sustain the judgment?

There is no implied power in a corporation to purchase its own stock.   Morawitz on Corp. 230; Savings Bank v. Wolfekuhler; 19 Kan. 65.

A corporation derives all its powers from the act creating it.   Head & Amory Co. v. Prov. Ins. Co., 2 Cranch, 127.

Being a mere creature of the law, it possesses only those

properties which the charter of its corporation confers upon it, either expressly or as incidental to its very existence. Dartmouth College v. Woodward, 4 Wheat. 636.

Corporations created by statute must depend both for their powers and the mode of exercising them upon the true construction of the statute itself. Bank of United States v. Dandridge, 12 Wheat 64.

A corporation can make no contracts and do no acts either within or without the state which creates it, except such as are authorized by its charter; and those acts must also be done by such officers or agents and in such manner as the charter authorizes. Bank of Augusta v. Earle, 13 Peters, 579, 587.

A corporation is strictly limited to the exercise of those powers which are specifically conferred on it. The exercise of the corporate franchise cannot be extended beyond the letter and spirit of the act of incorporation. Beaty v. Lessee of Knowles, 4 Peters, 152, 168; Pierne v. Ches. & Del. Canal Co., 9 Howard, 172, 184; Huntington v. Savings Bank, 6 Otto, 388, 393; New London v. Brainerd, 22 Conn. 552, 555; Commonwealth v. E. & N. E. R. Co., 27 Pa. St. 339, 157; Bard v. Poole, 12 N. Y. 495, 505.

A prohibitory clause in a charter everywhere cleaves to the corporation. No migration to another jurisdiction can afford escape from it, for its right to do business at all is derived primarily from the charter, or law creating it. If a contract entered into by a corporation was not authorized by its charter then such contract may be voided by either party so long as it remains wholly unexecuted. A corporation cannot be compelled by legal process to do an act unauthorized by its charter. This is the doctrine of the courts. We cite from many the following authorities; Leavitt v. Palmer, 3 New York, 19; Knowlton v. Cong and Em. S. Co., 57 N. Y. 518; N. Y. State L. v. T. Co. v. Helmer, 77 N. Y. 64; Wheeler v. Essex & P. R. Board, 39 N. J. L. 29; M. W. & P. R. Co. v. W. & P. P. R. Co., 7 Wis. 59, 79; N. W. Packet Co. & Shaw, 37 Wis. 655; Roch Ins. Co. v. Martin, 13 Minn. 59; Zottman v. San Fran-

cisco, 20 Cal. 96; Davis *et al.* v. Old Col. R. R. Co., 131 Mass. 258; Thomas v. Railroad Co., 101 U. S. 71.

The judgment of the court below was manifestly right and should be affirmed.

CHURCH, J.    This action was brought to recover damages for an alleged breach by the defendant of a contract purporting to bind it to take from one La Barre, the plaintiff's assignor, 2,000 shares of its own stock, held by him, at the expiration of six months from the date of the contract, and to pay him therefor three dollars per share; and it is alleged in the complaint that this contract was made in pursuance and fulfillment of a contract previously made by the company for the purchase of La Barre of an interest in a mica mine, a part of the consideration of which purchase was 2,000 shares of stock, to be accompanied by the execution and delivery of a contract, of the terms of the one sued upon.    The defendant is a corporation organized under the laws of Colorado.    The contract was signed by Duane Doty, president, and C. F. Griffing, treasurer of the company, and the corporate seal appears affixed thereto.    The answer admitting the incorporation, denies every other allegation of the complaint, and specifically denies that Doty and Griffing ever had any authority to make the alleged contract, and that the defendant ever made said contract and avers that the existence of said contract was never known to defendant until after the commencement of this action.    The answer also sets up the statute of Colorado, which declares it shall not be lawful for corporations, organized under its laws, to use any of their funds for the purchase of stock in their own company or corporation, except such as may be forfeited for non-payment of assessments thereon; and avers that the stock mentioned in the contract was stock of the defendant company, not forfeited for non-payment of assessments.

The cause was tried to the court without a jury.    The court found all the material issues in favor of the defendant in eight findings of fact, by which it is explicitly and plainly found and declared that the contract sued upon was executed by Doty and Griffing, and the seal affixed by Griffing without the authority,

knowledge or assent of the defendant or its board of directors, and without any authority, general or special, therefor from the defendant; and that the defendant never, in any manner, authorized, assented to, or ratified the making of this contract, and never knew of it until after the commencement of the suit; and, further, that the defendant never undertook or agreed to execute and deliver the said contract, or any instrument or contract of that character. Upon these points the findings of fact are full, complete, and unequivocal, and cannot be misun-understood. The court also finds as a fact the Colorado statute containing the provisions above quoted, and the facts necessary to bring defendant within its provisions. The conclusions of law are—First, that the contract sued upon is one which the defendant was expressly forbidden by law to make, and could not lawfully make; second, that said contract is not the contract of the defendant; third, that plaintiff is not entitled to recover against defendant any damages for the alleged breach of said contract; fourth, that defendant is entitled to judgment. Judgment was given accordingly.

The abstract of the record contains two sets of exceptions: one entitled ''Plaintiff's Exceptions;'' the other, ''Bill of Exceptions.'' The second set seem to have been intended as a sort of reaffirmance of the first. Their legal purpose is not apparent. Both sets contain exceptions to the findings of fact, to the ad-mission of evidence, and to the conclusions of law. The assignments of error are in the most general form, to-wit: (1) That the court below erred in each and every of its second, third, fourth, fifth, sixth and seventh findings of fact. (2) The court below erred in its conclusions of law, and in each thereof. (3) The court below erred in overruling plaintiff's exceptions to the decision of the court to each of the findings of fact and conclusions of law.'' As to which last it may be observed that the court did not overrule any of the plaintiff's exceptions to its decisions. The court decided, plaintiff excepted as he had a right to do, and the ''exceptions'' were allowed, and appear of record. Other assignments of error are still more formal.

There was no motion for a new trial. The first point which we notice is that although there are numerous exceptions to the findings of fact, yet neither in connection with these exceptions nor with the assignments of error, nor anywhere in the abstract of record, is a syllable of the evidence brought to our attention. But the court is asked to search a voluminous transcript for the purpose of ascertaining if the district court has made any mistakes in this respect. Since the clear and explicit statements by this court of the proper practice in this respect, in the cases of French v. Lancaster, 2 Dak. 276, S. C. 9 N. W. Rep. 716, and St. Croix Lumber Co. v. Pennington, 2 Dak. 467, S. C. 11 N. W. Rep. 497, it ought not to be necessary for this court again to call attention of counsel to the statutes and rules of court. It is contended by counsel for respondent that the question of the sufficiency of the evidence cannot be raised except on appeal from an order denying a new trial.

We are not prepared to say that where a cause has been tried to the court without a jury, a motion for a new trial is necessary for this purpose; there would seem to be no good reason for requiring it; but we do not now decide this question. We do, however, emphatically reaffirm the rules laid down in the cases above cited, and for this reason decline to consider, in this case, any question, except whether the facts found are sufficient to support the legal conclusions. And, first, as to the conclusion that the contract sued upon is not the contract of the defendant. The first point made by the appellant's counsel in their argument seems to be the result of a strange misapprehension of the views of the court below. Whatever its origin, the effect is to distort the findings and conclusions of the court upon this branch of the case, and to predicate of the findings and conclusions, so distorted, a misconception by the court of the law. The point is thus stated: "One of the objections urged against the right of the plaintiff to recover on the contract, and which the court below sustained, as shown by his findings, was that 'the seal of said corporation was not affixed thereto by its secretary, nor any other person authorized so to do.' This is equivalent to a holding by the court that the cor-

poration could not be bound by a contract, except under its corporate seal." Which "misconception of the law" counsel proceed with needless industry to attack.

The manner in which this objection is stated might possibly lead a casual observer to suppose that the words in subquotation marks were the language of the court, or that the court had in some way adopted them. They are in fact taken from the defendant's answer, wherein, after stating that the defendant's by-laws provide that the secretary is the only person having the custody of the corporate seal, and authorized to use the same, it is further alleged: "And that this pretended contract is not signed by the secretary of the defendant, and the seal of said corporation was not affixed thereto by its secretary, or by any other person authorized so to do; and defendant alleges the fact to be that said seal was fraudulently affixed to said pretended contract subsequent to the execution and delivery thereof, and that said contract is not the contract of the defendant.

What the findings of the court upon these points were has already been stated. They are unimpeached by the record; and it can hardly be necessary to say that they fully sustain the conclusions of law upon that point. This contract purports upon its face to be the contract of the defendant company, executed under its corporate seal, duly attested by the signatures of its president and treasurer. The court found, in terms which admit of no reasonable apprehension, that neither in fact nor in law is it what it purports to be. This alone would suffice to dispose of the case,

There is another point, however, which we will notice; it is alleged that the court erred in holding this contract to be an unlawful one,—one which the defendant could not lawfully make. The matter was pertinent and might have become essential, although, in the present aspect of the case, it is not. The facts in relation to this issue are found in favor of the defendant. The purpose for which the stock was to be purchased is disclosed by the contract itself, not to be for non-payment of assessment, and therefore not within the exceptions of the statute. The contract was an executory one. The theory by

which it is so sought to show that it was executed, is unsupported by anything in the contract itself; in fact, is directly opposed to it. Even were the facts as contended for by plaintiff's counsel, they would only show that the contract, in fulfillment of which the contract sued upon is alleged to have been given, was an executed one. This would still remain executory. But such facts do not appear except in the arguments of counsel. This contract purported to bind the defendant to do that which the law of its creation expressly forbade. It can hardly require argument or authority to demonstrate that such a contract was one which defendant "could not lawfully make," or having made, be compelled by law to perform. Morawetz on Corp. rule 8, p. 84; Davis v. Old Colony R. Co., 131 Mass. 258; Nellis v. Clark, 4 Hill, 424; Thomas v. Railroad Co., 101 U. S. 71; New York State L. & T. Co. v. Helmea, 77 N. Y. 64. We find no error in the record, and the judgment of the district court is therefore affirmed.

All the judges concurring.