## LOFTUS V. AGRANT.

1. Evidence in an action against a pawnbroker for conversion of a chattel held sufficient to sustain the conclusion of the jury that plaintiff pledged the article with defendant, and that defendant disposed of it before

the specified time to redeem, notwithstanding a bill of sale thereof by plaintiff to defendant, and an agreement of defendant to sell it to plaintiff, provided it was paid for by a certain time.

2. The question whether an action at law is maintainable for conversion of property pledged, when the transacted claimed by plaintiff to have been a pledge was evidenced by a bill of sale, will not be considered on appeal, not having been raised below.

(Opinion filed April 5, 1904.)

Appeal from circuit court, Minnehaha county; Hon. JOSEPH W. JONES, Judge.

Action by J. J. Loftus against J. Agrant. Judgment for plaintiff. Defendant appeals. Affirmed.

*Aikens & Judge,* for appellant.

*Joe Kirby,* for respondent.

FULLER, J. At the trial of this action to recover $125 as damages for the wrongful conversion of a diamond stud, the jury returned a verdict for $107.50 in favor of plaintiff, and defendant has appealed from a judgment accordingly entered, and from an order overruling his motion for a new trial.

In support of the issues raised by the complaint and a general denial, respondent testified on direct examination, and without any objection, as follows: "I reside at Sioux Falls. I am roadmaster on the Omaha. I met Agrant May 20th, and asked him for some money on a diamond stud. He asked me how much I wanted, and I told him $10 or $12, and he says, 'I will give you $15.' I says, 'All right.' I left the stone, and he gave me the money. I don't know the size. I paid $125. He further said there would be $1.50 interest for 30 days. I had a further talk with him before that 30 days was up, About June 10th I stopped into his place, and asked him

if the time could be extended if I should not happen to be in town, and he said, 'Yes.' There was nothing further said that I call to mind at that time. I had a talk with him later, about the 24th of June. I stopped in to pay him, and get the stud, and he told me that his wife had the stud, looking at it. He said he would bring it down that afternoon. I called there again in the afternoon, and he said, inasmuch as it was four days after due, he would keep it. He has kept it up to date. I have never seen it. I have never got paid for it." Cross-examination: "It was not material to me whether I got ten or twelve or fifteen dollars. I did not need any more than that. I asked him if I could borrow ten or twelve dollars. That is all I needed until I heard from home. That is what I told him. He looked the stone over carefully, and concluded he would let me have $15. I don't know what it weighed. He did not weigh it. He took my word for it. He examined it before me. I say it was worth $125. I know it was worth $125, because I paid that. I suppose if you pay $125 for anything, it is worth that much to you. That is the way I mean to be understood. I bought it from a first-class jeweler and a particular friend. I know it was worth $125 because it was worth that to me. I paid that for it. That was its market value. It would bring it in the market. I never did offer it for sale in the market. * * *. On the 24th day of June I asked him for the same stone I had left there. I offered to pay him for it. When I offered to pay him for it, I had the money out on the show case—$15. I had that much out in bills. I first read this agreement to sell that he gave me after he refused to give me the stone—after finding out that I had taken some paper from him which I never read. I never went to see him afterwards.

I just simply sued him." Relative to the transaction, and as further cross-examination, appellant introduced in evidence two written instruments, signed as indicated below, and delivered to the respective parties at the time the diamond was left with appellant at his place of business in the city of Sioux Falls, and one of them is as follows: "Bill of Sale, No. 3553. Sioux Falls, S. D., May 20, 1902. For value received I hereby sell and deliver to J. Agrant the following described personal property, and all right, title and interest in. and to the same, to-wit: one diamond stud W. 1¼ 1-6 $15. [Signed] J. J. Loftus." The paper which respondent received, and which he swears he never read, because he supposed it related to the time of payment merely, is as follows: "J. Agrant, Dealer in Diamonds, Watches, Jewelry, etc., Sioux Falls, S. D. Agreement to Sell. Sioux Falls, S. D. May 20, 1902. Upon surrender to me of this contract, and upon payment to me of $16.50 Dollars I hereby agree to sell and deliver to ———— or order from my stock in trade on hand at my place of business in consideration of my receiving the above mentioned sum of money as purchase price, the following described personal property, to-wit: One diamond stud W. 1¼ 1-6. Provided, however, that these presents are upon this express condition that if said purchase money is not paid on or before the 20th day of June, 1902, then this agreement, and all provisions contained therein shall be null and void. J. Agrant."

Appellant was a licensed pawnbroker, and, notwithstanding the foregoing instruments—designed probably to avoid the suggestion of exhorbitant interest—the jury was fully justified in its conclusion from the evidence admitted without objection that the transaction was a bailment of property by a debtor to

his creditor to be retained only until the obligation was discharged. Nor can it be said that the evidence is not sufficient to show that the diamond pledged was disposed of by appellant before the specified time to redeem, or within the period to which such time had been extended. As to whether the diamond produced by appellant at the trial, and which he swore was the one in controversy, and worth not to exceed $40, was the diamond pawned by respondent, and claimed to be worth $125, the testimony was sharply conflicting, and for the jury to consider in determining the question of identity and value.

The question whether an action at law is maintainable for the wrongful conversion of property pledged when the transaction is evidenced by a bill of sale was not properly raised at the trial, and therefore required no consideration. "An appellate court will not consider matters for review unless they were brought directly before the court below at the time of the trial." Gaines v. White, 2 S. D. 410, 50 N. W. 901; Dowdle v. Cornue, 9 S. D. 126, 68 N. W. 194.

No objection being made to respondent as a witness, nor to his testimony as to what his diamond was worth, the fact that appellant placed the value much lower is not sufficient to justify the conclusion that the verdict returned is not sustained by the evidence, and both motions for the direction of a verdict were properly overruled.

Nor was there any mistake in the rulings of the court on questions of evidence, and the instruction requested was rendered wholly unnecessary by the charge given.

The record discloses no error, and the judgment appealed from is affirmed.